UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER MEYER,

                                    Plaintiff,

               v.

ANDREW SAUL,
Commissioner of Social Security,

                                    Defendant.
_____

<u>DECISION AND ORDER</u>

19-CV-0973L

        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

        On November 4, 2015, plaintiff, then twenty-seven years old, filed an application for supplemental security income, alleging disability beginning November 1, 2013. (Administrative Transcript, Dkt. #7 at 13). His application was initially denied. Plaintiff requested a hearing, which was held September 25, 2018 before Administrative Law Judge ("ALJ") Stephen Cordovani. The ALJ issued an unfavorable decision on October 3, 2018. (Dkt. #7 at 13-23). That decision became the final decision of the Commissioner when the Appeals Council denied review on May 30, 2019. (Dkt. #7 at 1-3). Plaintiff now appeals.

        The plaintiff has moved for remand of the matter for further proceedings (Dkt. #10), and the Commissioner has cross moved (Dkt. #15) for judgment on the pleadings, pursuant to Fed. R.

Civ. Proc. 12(c).   For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.   *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, primarily comprised of mental health treatment records for major depressive disorder (severe, without psychotic features), generalized anxiety disorder with panic attacks, bipolar disorder, and asthma, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment.   (Dkt. #7 at 15).   Applying the special technique for mental impairments, the ALJ found that plaintiff has moderate limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; marked limitations in concentration, persistence and pace; and moderate limitations in adapting and managing himself. (Dkt. #7 at 17).

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels, with the following limitations: should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.   Plaintiff can understand, remember and carry out simple and repetitive instructions and tasks.   He can work in a low stress work environment (involving simple and repetitive work), with

2

no supervisory duties, no independent decision-making, no strict production quotas, and only minimal changes in work routines and processes.   He can no more than occasionally interact with supervisors and coworkers, cannot perform tandem or teamwork, and can have no more than incidental interaction with the public.   (Dkt. #7 at 18).

At the hearing, the ALJ asked vocational expert Dawn Blythe whether there were positions in the economy that a hypothetical individual with this RFC could perform.   Ms. Blythe testified that such an individual could perform the representative unskilled positions of photocopy machine operator, kitchen helper, and store laborer.   (Dkt. #7 at 22, 65-66).

## I.     The Medical Opinions of Record

The ALJ considered three medical opinions of record: that of plaintiff's treating psychiatrist, Dr. Jeffrey Kashin, consultative examining psychologist Dr. Janine Ippolito, and non-examining state agency consultant, Dr. Bruno.   Plaintiff argues that the ALJ failed to properly evaluate these opinions, or to give due consideration to the treating physician rule.

In general, the opinion of a claimant's treating physician as to the nature and severity of his impairments is entitled to "'controlling weight' so long as it 'is well-supported . . . and is not inconsistent with the other substantial evidence in the case record.'"   *Gough v. Saul*, 2020 U.S. App. LEXIS 949 at *2-*3 (2d Cir. 2020) (unpublished opinion) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).   Conflicting opinions by other medical experts, including consulting physicians, "may constitute such [substantial] evidence," *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983).   However, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)), particularly in the mental health context, where "a one-time snapshot of a claimant's status may

3

not be indicative of [his or] her longitudinal mental health." *Estrella*, 925 F.3d 90 at 98.   In determining whether to accord controlling weight to the opinion of a treating physician, factors to be considered by the ALJ include: (1) the nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; and (4) whether the opinion is from a specialist.   20 C.F.R. § 404.1527(c).

Further, the ALJ must articulate his reasons for assigning the weight he gives to a treating physician's opinion.  *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).   An ALJ's failure to apply the treating physician rule factors and give good reasons for declining to grant controlling weight is reversible error.  *Id.*, 177 F.3d 128 at 134.   "If, however, 'a searching review of the record' assures [the Court] that the substance of the treating physician rule was not traversed,'" and the record otherwise provides "good reasons" for the weight given to the treating physician's opinion, affirmation may be appropriate.  *Estrella*, 925 F.3d 90 at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Dr. Kashin, a psychiatrist, began seeing plaintiff in or around December 2015 (Dk. #7 at 460), and rendered two opinions concerning plaintiff's mental RFC.   On December 21, 2017, Dr. Kashin stated that plaintiff "continues to struggle significantly with managing anger and frustration and struggles with acting appropriately in social settings."   He found that plaintiff had "marked" limitations in understanding, remembering and applying information, and in maintaining concentration, persistence and pace.   He identified "extreme" limitations in the areas of social interaction and managing oneself.   In assessing plaintiff's work-related mental functioning in 25 specific areas, Dr. Kashin indicated "extreme" limitations in 11 areas of functioning (including sustaining a routine, completing a workday, dealing with normal work stress, interacting appropriately with others), "marked" limitations in 9 areas (including maintaining attendance,

4

understanding detailed instructions, and adhering to basic standards of neatness), and "moderate" limitations in the remaining 5 areas (including using public transportation and carrying out simple instructions), suggesting that there was not a single work-related mental function in which plaintiff had less than moderate limitations.   Dr. Kashin further opined that plaintiff's symptoms would cause him to miss more than four days of work per month.   (Dkt. #7 at 460-65).

On September 18, 2018, Dr. Kashin submitted an updated opinion indicating even more significant limitations, with "extreme" limitations in understanding, remembering and applying information, maintaining attention and concentration, and adapting or managing oneself, and "marked" limitations in social interaction.   Asked to rate plaintiff's ability to engage in 22 areas of work-related mental functioning, Dr. Kashin stated that plaintiff was completely "unable" to function in 15 areas, including maintaining a routine, getting along with others, dealing with work-related stress, and making simple work-related decisions.   Plaintiff could occasionally (up to 1/3 of a workday) function in 6 areas, including dealing with normal work stress, carrying out short and simple instructions, and maintaining basic hygiene.   Plaintiff could "frequently" use public transportation.   He was not without limitations in any of the 22 areas, and would miss more than four days of work per month due to his symptoms.   (Dkt. #7 at 632-6).

The ALJ acknowledged Dr. Kashin's status as a treating physician, but gave his opinions "little" weight.   (Dkt. #7 at 20-21).   In declining to afford controlling weight to Dr. Kashin's opinions, the ALJ observed that the dramatic limitations they described – indicating that plaintiff had limited functioning in every measurable area, and was virtually incapacitated in the majority of them – were "excessive and unsupported by the medical evidence of record and the claimant's level of activities."   (Dkt. #7 at 21).   By way of example, the ALJ compared plaintiff's self-described use of public transportation, weekly library visits, multiple shopping trips per week,

and independent management of his food stamps and other income to purchase video game equipment and video games, with Dr. Kashin's opinion that plaintiff is "extremely" limited (defined as a total inability to function independently, appropriately, effectively or on a sustained basis) in social interaction and managing himself.   (Dkt. #7 at 21, 634).   The ALJ's consideration of the apparent conflict between Dr. Kashin's opinions and plaintiff's self-reported activities was not improper.

The ALJ's finding that Dr. Kashin's opinions were contradicted by substantial evidence of record is well-supported, particularly in light of plaintiff's mental health treatment records.   Dr. Kashin met with plaintiff for only 15 minutes once every three or four months, for the purpose of managing his psychiatric medications.   Plaintiff's monthly mental health counseling appointments were conducted by LMHC Rachel Pickel or by other staff members in the same practice.   Neither plaintiff's progress notes by Ms. Pickel and other therapists, nor his medication monitoring notes by Dr. Kashin, substantiate the extreme functional limitations described in Dr. Kashin's opinions.

While plaintiff's mental health treatment records reflected periodic "mood swings," as noted by the ALJ (Dkt. #7 at 17), a typical supervision note, written March 29, 2018 by Ms. Pickel, observes that plaintiff "continues to attend all monthly app[ointment]s with clinician and medication management app[ointment]s with Dr [Kashin].   Christopher continued to report management of m[ental] h[ealth] s[ymptoms] and continues to display psychiatric stability.   Chris continues to improve social interactions as well as utilize assertive communication skills.   Chris continues to assist the counselor w[ith] coordinating care w[ith] all applicable providers.   Continues to report medication compliance as well."   (Dkt. #7 at 488).

Psychiatric Individualized Action Plan summaries of plaintiff's treatment (repeated several times throughout the record, and reflecting his longitudinal progress) indicate that from February 2012 through March 2018, plaintiff has "shown progress in continuing psychiatric stability [and] reasonabl[y] consistent functioning . . . continues to show progress in managing [mental health] symptoms and maintaining reasonable functioning . . . continues to develop and implement coping strategies to manage negative emotions/moods and continues to enhance social interactions . . . continues to show the ability to manage moods . . . continues to work toward improving social interactions . . . continues to attend all scheduled app[ointment]s w[ith] clinician and Dr. and continues to report benefit from medications…"   (Dkt. #7 at 500-503, 521-23, 529-30, 540-42).

Although Ms. Pickel and others noted that plaintiff occasionally presented as verbally aggressive, agitated, or irritable (Dkt. #7 at 335, 357, 359), his affect was typically assessed as full and congruent, his attention and concentration were fair, his fund of knowledge was adequate and his memory intact, his insight and judgment were fair, and he was described as "willing to participate" and "moderately receptive" or "receptive" to his therapy.   Dr. Kashin made similar observations during plaintiff's medication management visits, and consistently found that plaintiff's medication regimen was "helping" and should be continued.   (Dkt. #7 at 346, 348, 358-59, 390, 384, 389-90, 392, 486, 538, 544, 547, 549, 593, 596).   Plaintiff reported to his primary care physician in August 2016 that "his [b]ipolar [disorder], depression, and anxiety are being adequately treated."   (Dkt. #7 at 370).

In short, where, as here, a treating physician's opinion conflicts sharply with the plaintiff's activities of daily living, plaintiff's treatment records, and other medical opinions of record, those inconsistencies comprise "good reasons" for the ALJ to discount the opinion.   *See generally Brush v. Berryhill*, 294 F.3d 241, 260 (S.D.N.Y. 2018) (ALJ did not err in declining to give

controlling weight to opinion of treating psychiatrist whose contemporaneous treatment notes reflected no extreme limitations, since "[w]ere [the claimant] exhibiting severe mental impairments, one would expect a trained psychiatrist to note them and potentially to adjust medications").

Moreover, the Court recognizes that although Dr. Kashin was a treating psychiatrist, his visits with plaintiff were brief, infrequent, and limited to the purpose of managing plaintiff's medications, which were almost always found to be effective and not in need of any adjustment. As such, to the extent that the reasons given by the ALJ for declining to grant controlling weight to Dr. Kashin's opinion fell short of "good reasons" in that they neglected to specifically consider "the first [treating physician rule] factor – the frequen[cy], length, nature and extent of [Dr. Kashin's] treatment," I find that such error is harmless because this factor does not favor granting controlling weight to Dr. Kashin, and that a "searching review of the record" indicates that "the substance of the . . . rule was not traversed." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).  *See Scalia v. Saul*, 2019 U.S. Dist. LEXIS 215942 at *14-*15 (W.D.N.Y. 2019) (where opinion by treating psychiatrist – coincidentally, Dr. Kashin – is unsupported by treating therapist's records and Dr. Kashin's own medication management notes, the ALJ did not err in declining to grant it controlling weight); *Murabito v. Colvin*, 2016 U.S. Dist. LEXIS 149200 at *27 (E.D.N.Y. 2016) (where psychiatrist treated claimant sporadically and solely for medication management, and where his opinion is inconsistent with his own treatment notes, plaintiff's self-reported activities, and other evidence of record, ALJ did not err in declining to grant it controlling weight); *Dukett v. Colvin*, 2016 U.S. Dist. LEXIS 113504 at *6 (N.D.N.Y. 2016) (ALJ did not err in declining to credit opinion of treating psychiatrist whose relationship to the claimant "consisted of only medication management

with ten to fifteen minute visits held at three month intervals," and whose opinion was contradicted by other opinions of record).

Plaintiff also argues that the ALJ erred in declining to fully credit the opinion of consulting psychologist Dr. Ippolito, who examined plaintiff on February 2, 2016. She observed that plaintiff was cooperative with adequate social skills and manner of relating, but poorly groomed, agitated and restless. After administering simple objective tests of concentration and memory, Dr. Ippolito opined that plaintiff was able to perform simple work-related activities, maintain a regular schedule, perform complex tasks and make appropriate decisions. Dr. Ippolito found mild limitations in the ability to learn new tasks, moderate limitations in maintaining attention and concentration, moderate to marked limitations in social interaction and marked limitations in dealing with stress. (Dkt. #7 at 311-15).

The ALJ afforded Dr. Ippolito's opinion "some" weight, finding that claimant's self-reported activities such as going shopping several times per week, going to the library and taking public transportation, as well as his maintenance of relationships with a friend and several family members, were inconsistent with the "moderate to marked" limitations in social interaction that Dr. Ippolito described. The ALJ thus adjusted his RFC finding to reflect only "moderate" social limitations, and credited all of the other limitations contained in Dr. Ippolito's opinion, imposing RFC restrictions limiting plaintiff to simple, low-stress work with minimal changes, no decision-making or supervisory duties, no production quotas, no more than occasional interaction with supervisors and coworkers and incidental interaction with the public, and no team or tandem work. (Dkt. #7 at 17, 21).

The ALJ's consideration of plaintiff's self-reported activities of daily living and his personal relationships as evidence of his ability to engage in appropriate social interactions was

not improper, and his RFC finding with that plaintiff's social limitations were no more than moderate was well-supported by other evidence of record discussed above, including plaintiff's psychiatric treatment records, which document plaintiff's efforts to acquire and implement strategies for dealing with stress and interacting with people, and to engage in prodigiously greater levels of social interaction.   I find no error in the ALJ's analysis of Dr. Ippolito's opinion.

In summary, I find that the weight given by the ALJ to the medical opinions of record was appropriate and sufficiently explained, and that the ALJ's decision is supported by substantial evidence, and was not the product of reversible legal error.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #10) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #15) is granted.   The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      July 26, 2020.